The decree is affirmed, and the appeal dismissed at the costs of the appellants.

---

## APPEAL OF ANNA R. COXE.
## [ESTATE OF S. R. COLWELL, DECEASED.]

APPEAL FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 26, 1888—Decided April 23, 1888.

A testator constituted his wife his residuary legatee and one of the executors of his will. An account was settled by the acting executor, showing inter alia a reservation of certain securities to provide for the payment of two annuities. The account was confirmed without an audit on a statement signed by the widow as residuary legatee vouching for its correctness.

Statement of Facts.

The securities reserved to provide for said annuities passed into the hands of the widow, as executrix and residuary legatee, who afterwards remarried. On petition of one of the annuitants for an order on the executrix to pay the arrears of the annuity and to give security for further payment: *Held,*

1. That the Orphans' Court had full jurisdiction to make the decree ordering payment of arrears and requiring the security prayed for.
2. That it has not been either the policy or the practice of this court to reverse the findings of a master on the facts, when approved by the court, except in cases where the error is flagrant.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 185 January Term 1888, Sup. Ct.; court below, No. 277 April Term 1883, O. C.

The petition of Maria L. Fleming, of Brussels, Belgium, filed in the court below, averred in substance as follows :

That she was a creditor of the estate of S. Richards Colwell, deceased, under an agreement made by the testator in his lifetime by which he was to pay her $1,254.98 per annum, in equal half-yearly instalments on the first days of January and July in each year, during her natural life ; that he died in the year 1873, leaving a will duly proved, etc., wherein he gave his residuary estate to his wife Anna R. Colwell, and appointed E. M. Fulton, Charles R. Colwell and said Anna R. Colwell executors, all of whom accepted the trust and received letters testamentary ; that said executors made payments of said yearly sum until July, 1884, when they made default, and there was due and unpaid the instalments payable July 1, 1884, and January 1, 1885 ; that recently there was discovered an account settled by Charles R. Colwell, acting executor, showing a payment to petitioner of her annuity, and credit taken for $34,000 of bonds of the Camden & Atlantic R. Co., appraised at $30,000 and retained to provide for two annuities, one of which was that of the petitioner ; that the distribution account annexed to said account showed the payment of all the estate to Anna R. Colwell, as residuary legatee, except said bonds ; that these accounts had been confirmed by the court on the faith of an affidavit by said Anna R. Colwell, and that subse-

quently she had received said bonds, and was again married to Robert D. Coxe : Praying that an order be made requiring that said executors pay the arrears of said annuity ; that said Anna R. Coxe produce said bonds to the court, and that said executors enter security for the payment of said yearly sum to petitioner, or that the said bonds be placed in the hands of a trustee to make such payment out of the income thereof, and for further relief.

E. M. Fulton, one of the respondents, a non-resident was not served.   Answers having been filed by Charles R. Colwell and by Robert D. and Anna R. Coxe, the proceeding was referred to *Mr. S. W. Reeves*, as examiner and master, who reported in substance as follows :

The controversy grows out of a conveyance by the petitioner, Mrs. Maria L. Fleming, to the testator, S. Richards Colwell, of all her interest in the estate of William H. Richards.   This conveyance was by deed dated June 28, 1869, duly acknowledged and recorded.

William H. Richards, of Burlington county, New Jersey, by a certain deed of trust and by his will, gave the income of one-fourth of his estate to his wife for life, one fourth of the income to the petitioner, Mrs. Fleming, his sister, for life, and subject to these interests, gave his estate to his daughter, Anna R. Richards, who subsequently married her cousin, the testator, S. Richards Colwell, and after his death married Robert D. Coxe, Esq., and is the principal respondent.   One John S. Irick was the trustee under the deed and the executor of the will.   Mr. Irick's administration proving unsatisfactory, Mr. and Mrs. Colwell determined to get rid of him, and to this end purchased the outstanding life interests of Mrs. Richards, the widow of William H. Richards, and of Mrs. Fleming, and the deed above mentioned is her conveyance of her interest.   With respect to Mrs. Richards it is conceded that the consideration of the conveyance, as named therein, was an annuity.   The questions in controversy depend primarily on the consideration for Mrs. Fleming's deed.

Bearing even date with the deed is the covenant of S. R. Colwell, in evidence.   This recites the deed and that the consideration of $8,571 therein mentioned "was and is estimated

upon the assumed basis that the net one fourth of the estate in the hands of the said John S. Irick, as aforesaid, will amount to the sum of $12,500, and interest thereon at the rate of six per cent. per annum from the day of the date of said indenture, which on the settlement of the accounts of said John S. Irick, and disposition of the estate in his hands, may amount to more or less than said sum of $12,500;" whereupon the testator covenants with Mrs. Fleming as follows: " That if, on the settlement of the accounts of John S. Irick and disposition of the said estate in his hands, the net one fourth part of said estate shall amount to more or less than the said sum of $12,500 with interest thereon from the day of the date of said indenture, at the rate of six per cent. per annum, that then the said consideration of $8,571 shall be increased or diminished by me, my heirs, executors or administrators, in the ratio of such excess or diminution over said sum of $12,500."

It is argued by the petitioner that this covenant and the other circumstances of the case, all taken together show an absolute sale to Mr. Colwell and the assumption on his part of a personal obligation, enforceable like any other debt, against his estate in this court, and that he was to pay interest at the rate of six per cent. per annum on the entire value of one fourth of Mr. Richards' estate during petitioner's life. On the other hand, it is contended on behalf of Mrs. Coxe, that while he was in form a purchaser, the conveyance was only intended to enable Mr. Colwell and his wife to get the estate out of the hands of Mr. Irick; and that Mr. Colwell was really only the agent, or bailee, of Mrs. Fleming, who remained the real owner of her life interest, and entitled to receive the income derived from it and no more. It is contended that the principal has been lost, that there consequently has been no income, and that, even if there were, as there was only a trusteeship created by act inter vivos, the remedy is exclusively in the Court of Common Pleas.

If the deed and covenant stood alone, the examiner might perhaps be of opinion that there was a personal obligation imposed on the testator, but that it was for a round sum to be ascertained on the final settlement of the estate of William H. Richards by taking the sum of one fourth of the estate and

the interest thereon, and finding from it an amount which bears the same proportion to it that $8,571 bears to $12,500. At this point it is proper to explain that Mrs. Fleming was then, as she is now, a resident of Belgium; that the testator was her agent in this country having in charge a considerable amount of property belonging to her, and was in constant correspondence with her, and that there was a considerable number of letters passing between them relating to this sale. The matter was first mentioned in a letter of testator's to Mrs. Fleming dated June 22, 1869, in which he proposed either to pay her the annual value of her interest, in the shape of an annuity, or to pay down the present valuation of a life interest. Six days later, apparently without awaiting a reply, he sent her the deed for her signature with the covenant ready executed by him in case she desired to adopt that course. A number of letters passed before the papers were signed, in some of which there were expressions which seem to show that if the covenant was executed Mrs. Fleming would simply commit to him the management of her share of the estate. It was, however, at last signed; whereupon, Mr. Colwell having become the purchaser of the two outstanding life interests of one fourth each, he and Mrs. Colwell filed their bill in equity in the Court of Chancery of New Jersey, in which they averred that "by virtue of the premises" (the conveyances by Mrs. Richards and Mrs. Fleming respectively) "S. R. Colwell and Anna R., his wife, owned absolutely the whole estate."

An answer was filed by Mr. and Mrs. Fleming admitting the facts and disclaiming any further interest in the estate, and an answer was also filed by Mr. Irick. A decree was accordingly made directing a conveyance by Irick which was made.

In view of these proceedings, it is impossible to say that the testator, S. R. Colwell, has no interest in the property and merely managed it as petitioner's agent. He might perhaps have held it as her trustee, yet as to this it is well to bear in mind his statement that he had been advised by Mr. Browning, most able counsel, that a conveyance to him as trustee "would not answer the purpose of divesting the title from Irick" and in view of the allegation of absolute ownership and Mrs. Fleming's disclaimer of any further interest, the examiner is

not disposed to so hold. Such a secret trust would closely approach a fraud on the court, who decreed a conveyance on the basis of an absolute interest, equitable as well as legal.

Even conceding such a private trust, which perhaps ought to appear by writing, and the examiner cannot find any writing which to his mind satisfactorily shows it, there would still remain the question whether some other arrangement was not subsequently made; whether the trust was not abandoned, the parties standing on their rights under the conveyance, and merely making other arrangements respecting the payment of the consideration. Both in this aspect and as bearing on the original understanding, the conduct of Mr. Colwell in accounting to Mrs. Fleming is conclusive. He was, as already stated, attorney for Mrs. Fleming in her other American interests, and as such rendered many accounts; but he never included among them the proceeds of the Richards estate.

[Other facts found by the master upon which his conclusions were based, sufficiently appear in the opinion.]

To sum up: the examiner finds that the testator in his lifetime bound himself to pay to Mrs. Fleming, the petitioner, the annual sum of $1,254.98 in semi-annual payments unless increased or reduced; that there is no evidence of expenses which would reduce it; that this was a personal obligation on his part, binding him during his lifetime and his estate after his death during the life of Mrs. Fleming; that this obligation was not released or extinguished; and that in the settlement of the first account of the acting executor, bonds ample in amount to secure most abundantly the two outstanding obligations of the testator were set aside for the purpose of meeting them, which bonds came to the hands of the respondent, Anna R. Coxe, one of the executors of the testator, and they, or their proceeds, are now, in contemplation of law, in her hands for that purpose. The annuity is in arrear from January 1, 1884. Mrs. Coxe should pay it from that date.

It is contended that this court has no jurisdiction of the subject. One reason given is the statement that the obligation accrued since the death of the testator. This statement is incorrect; the obligation is that of the testator, although the instalments of money now demanded became payable aft-

Decree of Court below.

erwards. They are in the same position as a promissory note or bond made by him in his lifetime, but maturing afterwards. It is exactly parallel with Hunt's Appeal, 14 W. N. 377, which was substantially an annuity. The other reasons given are inapplicable to the facts as above found.

The petitioner has asked for a decree requiring Mrs. Coxe to give security under the acts of March 29, 1832, § 25, P. L. 195, and April 25, 1850, § 1, P. L. 569; also requiring her to file an account. The latter seems to be a needless expense; there is no suspicion that there are other claims outstanding, and the examiner has found that the bonds set apart for the purpose were ample to secure both of the annuities. As the bonds were set aside for this specific purpose, there is no reason why the court should not at once order the executrix who received them to so apply the money from them. The terms of the acts seem to be mandatory in requiring security from an executrix marrying. The examiner therefore submits a decree for the payment of the sum of $3,764.94, being the annuity due since January 1, 1884, and requiring the entry of security. She should also pay the costs of this proceeding, including the examiner's fee of three hundred dollars.

To this report and decree recommended, various exceptions were filed by Mrs. Anna R. Coxe, respondent, which were overruled by the court, ASHMAN, J., delivering the opinion, reported in 4 Pa. C. C. R. 381. The report being confirmed a decree was signed as follows:

1. That Mrs. Anna R. Coxe, executrix of the last will and testament of S. Richards Colwell, deceased, do, within thirty days from this date, pay to the petitioner, Mrs. Maria L. Fleming (or her attorney of record) the sum of three thousand seven hundred and sixty-four dollars and ninety-four cents, the amount of the annuity due and payable to said Maria L. Fleming since January 1, 1884, by the estate of S. Richards Colwell, deceased, together with interest at the rate of six per cent., to be computed upon the semi-annual instalments of said annuity, from the respective dates on which the same became payable, to wit, the first days of January and July in each year, down to the date of payment.

2. That Mrs. Anna R. Coxe do, within thirty days from

this date, enter security as executrix of the estate of S. Richards Colwell, deceased, in the sum of thirty-four thousand dollars.

3. That Mrs. Anna R. Coxe, executrix aforesaid, do pay the costs of this proceeding, including the examiner's fee of three hundred dollars.

Thereupon the exceptant took this appeal assigning the several sections of the said decree as error.

*Mr. Wm. W. Wiltbank*, for the appellant.

*Mr. Frank P. Prichard*, for the appellee.

The arguments of counsel were confined chiefly to the questions of fact in the case.

OPINION, MR. JUSTICE CLARK:

The conveyance of 28th June, 1869, from Maria L. Fleming to Samuel R. Colwell, was in the form of an absolute deed; the consideration, which was fixed at $8,571, was estimated upon the annuity tables as the value of the annual instalments of interest payable to her during life, on the assumed basis that the net one fourth of the estate in the hands of the trustee would amount to $12,500. By the agreement, which accompanied the conveyance, however, it was agreed, that if on the settlement of the trustee's account and the disposition of the estate in his hands, the net one fourth part of the estate should amount to more or less than $12,500 with the interest thereon, then the consideration of $8,571 should be increased or diminished in the ratio of such increase or diminution. The transaction appeared thus to be founded upon a movable consideration, no part of which was paid. It seems, however, to be conceded that the deed was used, under the advice of counsel, to unite the interests of all in one, in order to take the estate out of the hands of Irick, the trustee, whose methods were not satisfactory to the parties. It is not pretended by either party that the deed and covenant represented the transaction precisely as it was; indeed it seems clear that, at the time these writings were executed, no definite understanding existed between the parties.

The contention of the appellant's counsel is, that whilst the conveyance from Mrs. Fleming to Colwell is absolute, yet the understanding of the parties, as shown by their subsequent

correspondence, was that Colwell acted as the agent of Mrs. Fleming, holding her estate in trust for investment to her use; that he was simply the custodian of her title, and acted as her attorney in fact; that in good faith, with ordinary prudence, and with her consent, he invested her funds in the bonds and mortgage of the Plymouth Iron Co., an enterprise which ended in a total loss, and that his estate is not responsible to her therefor.

On the other hand, it is contended, on the part of the appellee, that from the manner in which the investments were made, the accounts kept, and the business transacted, it is manifest that Colwell regarded himself as a purchaser and owner of Mrs. Fleming's interest in the estate, for the actual amount realized; that he held himself liable to her for one fourth of the interest on the entire fund coming into his hands, giving to her the advantage of the actual instead of the estimated value, and that this was the nature of the arrangement alluded to in the correspondence between them; that when the Atsion estate was disposed of, and all matters relating thereto were adjusted and settled, it was ascertained that the principal on which Colwell was held for payment of interest under the terms of the will, was $83,665.96, and that one fourth of this sum was agreed upon as the fund upon which Mrs. Fleming was entitled to draw interest annually, under the terms and conditions of the covenant.

A question of fact was thus raised as to the actual relation of the parties, which question the master and the court, upon a full consideration of the evidence, have determined in favor of the appellees, and we are of opinion that in this they were right. It has not been either the policy or the practice of this court, to reverse the findings of a master on the facts, when approved by the court, except in cases where the error is flagrant, and we discover no such error in this case. Indeed upon a careful examination of the whole case, the findings of the master would seem to be fully justified by the evidence. The investment of the fund upon which Mrs. Fleming was entitled to interest, does not appear to have been in any way distinguished from the residue, of which Colwell was himself the owner; the statements rendered from time to time were of the entire fund, in such form as to exhibit the interest product

of the whole; Mrs. Fleming does not appear to have been consulted as to the mode or form of investment, or as to the rate of interest, nor does she appear at any time to have assumed any right to control Colwell, or to question his conduct or management of the fund. The result of the negotiations between the parties is shown in the letter of 10th February, 1871, in which Colwell develops the arrangement existing between them, and undertakes to pay to her the interest on one fourth of the entire net balance which may come into his hands. His account would seem to have been completed, subject to certain modifications, on the 16th May, 1873, when, prior to his departure for Europe, he furnished to her a full statement of the Atsion estate, exhibiting a balance of $83,665.96, upon which he was to pay interest. In this letter he says: "As you will see by reference to the account, one fourth of the interest due on the first day of next July will be $382.18. The principal, on which I have to pay interest from July 1st, is shown to be $83,665.96, and one fourth of the annual interest on that $1,254.98, making the semi-annual payments to you $627.49."

The statement which he furnished to the Pennsylvania Company on the 18th April, 1873, a copy of which he forwarded to Mrs. Fleming, was to the same effect. In that he says: "Mrs. Fleming is entitled to a payment from S. R. Colwell, under an agreement with him, of a yearly sum from July 1, amounting to $1,254.98, and has also a life interest in the estate of Mrs. Ann R. Richards."

About the time of his departure for Europe, he placed in the hands of his brother a memorandum headed, "Liabilities of S. R. Colwell," which contained the following:—"Semi-annual sum payable to Mrs. Maria L. Fleming during her life, as follows: July 1, 1873, $382.16, and thereafter until Atsion account is modified by further receipts and expenditures, on the first day of each January and July, $627.49. This to be paid to the Pennsylvania Company for insurances on lives and granting annuities, from whom receipts are to be taken as amounts due by S. R. C. to Maria L. Fleming, as per agreement, in relation to Atsion estate of W. H. Richards, deceased."

Colwell paid one instalment at the rate indicated in the fore-

going statements, and died in August, 1873; his brother, as the executor of his last will and testament, continued to pay the same amount annually until 1876, when he placed the securities, which by the order of the court had been reserved for the payment of this annuity, in the hands of Mrs. Colwell, now Mrs. Coxe, the appellant, who continued to pay at the same rate until the year 1884. There is perhaps no direct or positive evidence to be found in the correspondence, of any agreement of Colwell to pay Mrs. Fleming upon the footing of a fixed annuity, but the accounts and dealings between the parties, and Colwell's statements, clearly indicate that this was the method adopted. The correspondence, which has been much relied on by the appellant's counsel, does not appear to be greatly inconsistent with this view of the case. Moreover, Mrs. Fleming's one fourth part of the fund was not ear-marked in any way; there was no account kept by which it could be distinguished from the residue of the fund. There is no ground, therefore, for supposing that the $27,500, which were lost with the Plymouth Iron Company, was that portion of the fund in which Mrs. Fleming was particularly interested. In view of these facts, which seem to be of the most convincing character, we cannot see how the master could have avoided the conclusion to which he came. That this was without doubt the understanding of Mrs. Coxe herself, and of those having charge of the settlement of Colwell's estate, is manifested in the method which was adopted to make provision for this claim. At the settlement of the executor's account, in order that a proper distribution of his estate might be made, certain securities were set apart for the payment of the annuity of Mrs. Fleming. Mrs. Coxe, who was co-executor with Charles R. Colwell prior to the confirmation of his final account, appended to it a certificate in the following form:—

" I hereby acknowledge that I have received the several sums and securities credited as paid to me in the foregoing account of Charles R. Colwell, acting executor of S. Richards Colwell, deceased, and I declare that I have examined the said account and it is correct; and I hereby agree that the same may be absolutely confirmed by the court, without reference to an auditor, and respectfully request the honorable court to confirm the same, without audit, all debts of the said estate having been

fully paid, with the exception of two bonds given by the testator to secure the payment of two annuities, amounting together to two thousand and five dollars per annum, for which securities have been reserved, as appears by the account, the principal of the bonds falling into the estate on the death of the annuitants, and payment of the annuities having also been assured by myself, the residuary legatee."

In this form the account was ultimately confirmed, and the securities which were thus reserved, together with all the others belonging to the estate, were subsequently passed into her hands. She was the residuary legatee, but she was also the executrix, and as executrix she is bound to answer Mrs. Fleming's demand. Being both executrix and residuary legatee, she cannot elect to disregard her duty in one capacity in order to avail herself of her rights in the other. The court had undoubted jurisdiction of the funds in her hands as executrix, and the decree was rightly entered.

The decree of the Orphans' Court is affirmed, and the appeal dismissed at the cost of the appellant.